UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DUSTIN S.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. C26-5203-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating his testimony and the medical opinion evidence, resulting in an erroneous residual functional capacity ("RFC") determination. (Dkt. # 10.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 13.) Plaintiff filed a reply. (Dkt. # 14.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.[1]

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

## II. BACKGROUND

Plaintiff was born in 1983, has at least a high school education, and has no past relevant work. AR at 49. In February 2023, he applied for benefits, alleging disability as of November 12, 2012. *Id.* at 38. His applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing in April 2025, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 38-50.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, severe impairments of degenerative disc disease, bilateral hip osteoarthritis, migraine, anxiety disorder, depressive disorder, and trauma. AR at 40. The ALJ assessed an RFC for light work with the following limits: occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; tolerance for moderate or lower noise; occasional exposure to hazards, including high, exposed places and proximity to moving mechanical parts; ability to understand, remember, and carry out simple instructions; occasional interaction with coworkers; ability to make simple work-related decisions; regular breaks at two-hour intervals; and tolerance for occasional exposure to bright light, including direct sunlight. *Id.* at 43. Relying on vocational evidence, the ALJ found Plaintiff could work as a marker, router, and storage facility rental clerk and therefore was not disabled. *Id.* at 50.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

[2] 20 C.F.R. § 416.920.

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV. DISCUSSION

### A. The ALJ Did Not Err in Evaluating Plaintiff's Testimony

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th

Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing Plaintiff testified that he has lower body injuries which prevent him from doing physical work. AR at 71. He also has migraines one or twice a week which last for multiple days. *Id.* His migraines make him sensitive to sound and light, and occasionally cause partial temporary blindness, brain fog, nausea, and tinnitus. *Id.* His last job was unusually flexible in accommodating his migraines. *Id.* at 71-72. His migraines are triggered by stress, neck positioning, and lights. *Id.* at 72. When he has partial blindness with his migraines it lasts twenty to forty minutes. *Id.* After a migraine ends, he has continuing symptoms, such as being inattentive, brain fog, and slow reaction time. *Id.* at 73.

He has pain, stiffness, and a limited range of motion in his lower body. AR at 73. His right hip will "lock up" and it becomes "severely hard for [him] to – to actually, like, walk around and move." *Id.* at 74. He has "flare-ups" of physical symptoms causing an increase in his mobility issues a "couple times a week." *Id.* at 75-76. He cannot stand for more than twenty minutes and can only sit for half an hour before experiencing rigidity and stiffness issues. *Id.* at 75, 77. He struggles with doing laundry because he cannot stand long and can only do an activity for twenty to thirty minutes at a time even on good days. *Id.* at 82-83. He is only comfortable reclining or lying down. *Id.* at 83.

He has also been diagnosed with post-traumatic stress disorder and depression. AR at 79-80. He is triggered by people appearing sick in public, which causes an anxiety spike and for him to feel as though he needs to leave the area. *Id.* at 79. He takes a daily migraine medication which causes insomnia, and the medication he takes at the onset of a migraine causes drowsiness. *Id.* at 80-81.

The ALJ discounted Plaintiff's migraine testimony, in part, as contradicted by the objective medical record. AR at 45. Plaintiff completed a headache diary reflecting nearly constant migraine headaches,[3] but attended therapy appointments during many of the noted dates and rarely complained of headaches. *Id.* For example, on October 17, 2024, Plaintiff attended an in-person counseling session in the middle of a three-day migraine. *Id.* at 1797-98. Plaintiff was engaged during the one-hour therapy appointment and able to express himself clearly and discussed pain he was contemporaneously feeling with his counselor, including "shoulder, hip, knee pain today, some of which feel like they 'are on fire.'" *Id.* at 1798. He did not discuss headaches or migraines at this appointment. *See id.* Plaintiff's ability to be present and attentive during therapy appointments, even when in the midst of a multi-day migraine, was a reasonable basis to discount Plaintiff's testimony of disabling migraine symptoms.

The ALJ further discounted this testimony as inconsistent with Plaintiff's conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). There is no evidence Plaintiff sought help of a neurological specialist, and he did not require emergent care for his migraines, which the ALJ reasonably found contradicted the alleged severity of his migraines. Accordingly, the ALJ did not err in discounting Plaintiff's migraine testimony.

The ALJ further discounted Plaintiff's mental health complaints as inconsistent with the longitudinal medical record. Plaintiff's mental status exams were generally within normal limits,

---

[3] From March 2024 through March 2025 Plaintiff documented migraine headaches on the following dates: in 2024, March 23, 28-30, April 7-10, 12-15, 17-20, 25-26, 28, May 5, 9-10, 13, 15-16, 20, 27-28, June 1-2, 5, 9-11, 13, 21-23, July 2, 6-7, 16-19, August 1-3, 5, 10, 13, 22-25, September 11-13, 19-21, 27, October 2-5, 9, 16-18, 25-29, November 1, 9, 11, 14-16, 18-21, December 2, 7-8, 11-12, 17, 20-21, 31, and in 2025, January 3, 10, 16-17, 22, 30, February 1, 9-10, 12-14, 17, 18, 24, 2025, and March 7-11. AR at 465-66.

only occasionally presenting with a sad or depressed affect, but otherwise stable symptoms. AR 45. Plaintiff does not meaningfully challenge the ALJ's findings regarding his mental health, (*see* dkt. # 10 at 6-10), and has shown no error in the ALJ's evaluation.

Lastly, the ALJ properly discounted Plaintiff's testimony as inconsistent with his activities. *See Smartt*, 53 F.4th at 498-500 (ALJ properly considers inconsistency between testimony and activities). Though Plaintiff testified to significant physical difficulties, Plaintiff reported going to the gym, strength training up to three times a week, and walking. AR at 47 (citing, *e.g.*, *id.* at 407 ("0-3 x week go to gym for modified strength training"), 1638 ("[Plaintiff] has been trying to go to the gym and walk more."). He also reported shopping, reading, doing art, and watching TV. *Id.* at 47 (citing *id.* at 410 ("How often and how well do you do these things? Reading: daily, very well/Art: 0-2x month, moderate/TV: daily . . ."). It was reasonable of the ALJ to find this evidence inconsistent with Plaintiff's testimony. Accordingly, Plaintiff has not shown the ALJ erred in his evaluation of Plaintiff's testimony.

**B. The ALJ Did Not Err in Evaluating Medical Evidence**

Under the applicable regulations, the ALJ must articulate the persuasiveness of each medical opinion, addressing supportability and consistency, and those findings must be supported by substantial evidence. *See* 20 C.F.R. § 416.920c(a)-(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In March 2024, Plaintiff's primary care physician, Kamyar Vaziri, M.D., opined that Plaintiff was limited to sedentary-level work and could not perform even that during flare-ups. AR at 1743-47. In February 2025, Dr. Vaziri also wrote a MyChart message stating that "mental health, frequent migraines and also chronic hip and back pain . . . have not allowed [Plaintiff] to hold a steady job." *Id.* at 1882.

The ALJ found Dr. Vaziri's opinions unpersuasive because they were unsupported and inconsistent with the longitudinal record, citing records showing improvement with medication and physical therapy, largely benign physical exam findings, and the absence of specialized neurological care or emergent migraine treatment. AR at 48.

Plaintiff concedes some improvement with treatment but argues that minimal improvement is not inconsistent with Dr. Vaziri's opinions and that the record does not show improvement sufficient to sustain employment. (Dkt. # 10 at 2-6.) An ALJ properly discounts a medical opinion which is inconsistent with medical findings and improvement with treatment, which is the case here. *See Smartt*, 53 F.4th at 496.

Exams showed Plaintiff had a largely normal range of motion in his lower extremities with minimal pain. AR at 1471, 1504, 1519-20. The record also contains numerous records of Plaintiff's physical therapy, including most recently in a period from November 2024 through January 2025. *Id.* at 1856-78. By the time physical therapy ended, Plaintiff had met all of his goals for knee functioning and the majority of his shoulder functioning goals. *Id.* at 1857. Plaintiff's physical therapist advised continuing his home exercise program and following up with his primary care provider if the pain continued or worsened. *Id.* He reported no pain in his knee and only 1/10 pain when his shoulder was at rest following this round of physical therapy. *Id.* at 1860. As for his migraine limitations, Plaintiff documented that his medications were largely successful at alleviating symptoms, with increased efficacy over time. *Id.* at 465-66. And as discussed above, the ALJ did not err in finding Plaintiff's migraine treatment conservative, which is a proper basis to discount this opinion. Accordingly, the ALJ did not err in finding Dr. Vaziri's opinions unpersuasive.

As Plaintiff's argument regarding the ALJ's determination of his RFC is derivative of his arguments relating to the ALJ's assessment of the evidence, it also fails. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

**C. The ALJ Did Not Err in Evaluating the Vocational Testimony**

Plaintiff last argues that the ALJ erroneously relied on jobs that the vocational expert ("VE") found he could perform, because sources on which the VE did not rely conflict with his testimony. (Dkt. # 10 at 11-13.) Plaintiff specifically challenges the amount of contact with the public and the reasoning level of the jobs the VE identified. (*Id.*) An ALJ may rely on a VE to testify as to what jobs a claimant with a given RFC can perform and the availability of those jobs. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). To do so, the ALJ poses a hypothetical to the VE that reflects all of the claimant's limitations. *Id.*

Plaintiff first challenges the finding that he can perform the three jobs identified by the VE because the O*NET identifies these jobs as requiring more than the RFC's limitation to occasional interaction with coworkers. (Dkt. # 10 at 11-12.) While this information does differ from the VE's testimony, it does not show that the ALJ erred in relying on the VE's testimony at step five. *See Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) ("[A] VE's testimony is one type of job information that is regarded as inherently reliable[.]"). The ALJ presented a hypothetical to the VE which matched his ultimate RFC determination. AR at 85-86. The VE opined that a person with Plaintiff's RFC, including the limitation to only occasional interaction with coworkers, could perform the jobs of marker, router, and storage facilities rental clerk. *Id.* at 86. The VE additionally testified twice that the number of jobs available would not require any adjustment to account for Plaintiff's RFC. *Id.* at 87, 91. Further, at the hearing the VE was asked about Plaintiff's social limitations and indicated that only the job of storage clerk would be

impacted by a limitation to only superficial public contact. *Id.* at 89-90. As Plaintiff concedes, the VE's testimony did not conflict with the Dictionary of Occupational Titles ("DOT"), the source on which the VE relied. *Id.* at 88, (Dkt. # 10 at 11-12). The VE has over thirty years of experience as a vocational rehabilitation counselor, AR at 460, and explained that he does not rely on the information in O*NET, as O*NET does not list Social Security as a recommended agency to use O*NET and he finds the use of job groupings as opposed to individual jobs not useful in a Social Security setting. *Id.* at 92-93. It was reasonable of the ALJ to rely on the VE's testimony that Plaintiff could perform these jobs even with a limitation to only occasional interaction with coworkers.

Plaintiff also challenges the finding that he can perform the jobs of router and marker, as each have a Reasoning Level Two which he believes conflicts with the limitation to simple instructions. (Dkt. # 10 at 13.) The Ninth Circuit has recognized, however, that Reasoning Level Two can be consistent with limitations to simple instructions. *Cf. Leach v. Kijakazi*, 70 F.4th 1251, 1256-57 (9th Cir. 2023) (holding that Reasoning Level Two is consistent with simple, but not necessarily *short* and simple, instructions); *see also Ranstrom v. Colvin*, 622 F. App'x 687, 688-89 (9th Cir. 2015) (no "appreciable difference" between ability to make simple decisions based on "short, simple instructions" and Level Two reasoning requiring "detailed but uninvolved" instructions). As these two positions have over 160,000 nationally available jobs, any error in finding Plaintiff could perform the job of rental clerk, which requires Reasoning Level Three, is harmless. *See Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (finding 125,000 nationwide jobs significant). Accordingly, Plaintiff has not shown the ALJ erred.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 20th day of August, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge